LAMONT THOMAS ET UX. *v.* FORD MOTOR
CREDIT COMPANY

[No. 658, September Term, 1980.]

*Decided May 11, 1981.*

618

The cause was argued before MORTON, MELVIN and COUCH, JJ.

*Robert S. Sherman,* with whom was *Richard W. Winelander* on the brief, for appellants.

*Robert D. Harwick, Jr.,* with whom were *Donald C. Allen,*

*Theodore B. Oshrine* and *Allen, Thieblot & Alexander* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellants, Lamont and Beverly Thomas, appeal from an order of the Circuit Court for Baltimore County (Raine, J.) sustaining the demurrer without leave to amend the demurrer of appellee, Ford Motor Credit Company. The appellants assert that the lower court erred in sustaining the demurrer in that a cause of action was stated against the appellee in each and every count of the declaration.

Appellee has filed a motion to dismiss this appeal for appellants' noncompliance with Maryland Rules 1028 a — c. The motion is without merit and, therefore, denied.

The declaration to which the appellee demurred was an amended declaration. A previous declaration had also been demurred to by Ford Motor Credit Company and the same court (Hinkle, J.) had sustained the demurrer on all but one count. The appellants were granted leave to amend. Appellants then filed the amended declaration which is before us in this appeal. The amended declaration, without referring to the previous declaration, reiterated the count on which the demurrer had been overruled.

The appellee, claiming no notice of the amended declaration having been filed, answered the original declaration by way of a general issue plea to the appellants' count on which Judge Hinkle had overruled the demurrer. Appellee, upon learning of the amended declaration, filed a demurrer to all counts. Thereafter, the demurrer to the amended declaration was sustained by Judge Raine as to all counts, including the reiterated count.

The appellants filed their declarations based on the following alleged set of circumstances. On or about May 30, 1978, the appellants bought a 1977 Mercury Monarch automobile from Monarch Lincoln Mercury (seller).[1] They financed the

1. The amended declaration, as had the previous declaration, named the seller as a defendant and relief was sought against both the seller and the

purchase of the car by entering into a retail installment contract which was assigned to the appellee. Printed on the face of the contract is the notice required by Md. Com. Law Code Ann. § 14-1302:

"NOTICE

Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder."

The car had been used as a "demonstrator model" and the odometer showed 12,000 miles. The appellants assert that the car was represented as being of the same standard, quality and grade as a new automobile of the same year and model. Furthermore, the appellants paid for an "extended warranty" which covered the car for up to 36,000 miles or two years. The cost of this warranty was included in the purchase price but not specifically disclosed on the retail installment contract.

The appellants asserted that the vehicle possessed so many defects as to render it unfit for transportation and constituted a safety hazard. It was further alleged that the seller attempted to repair the defects but was unable to do so and refused to replace the automobile. Appellants did not revoke acceptance of the car[2] but brought this action, maintaining that the vehicle is worth only a small fraction of the purchase price.

The amended declaration before us sets forth the appellants' claims in six counts. According to their brief, those

appellee in all counts. The seller also demurred to the previous declaration which we assume was sustained. (The order is not included in the transcript.) The seller apparently did not demur to the amended declaration and we are informed that the law suit between the appellants and seller is pending in the Circuit Court for Baltimore County. The court entered a final judgment in favor of Ford Motor Credit Company, thus permitting this appeal pursuant to Md. Rule 605 a.

2. Revocation of acceptance is dealt with in Md. Com. Law Code Ann. § 2-608.

counts assert the following: (1) "the sale of this particular automobile was in violation of the implied warranty of merchantability"; (2) "[t]he defects were of such a nature as to violate the implied warranty of fitness for a particular purpose"; (3) there was a breach of an express warranty by the seller in that the seller failed to repair the car as promised; (4) "the seller misled and/or deceived the Appellant[s] by deliberately misrepresenting the condition of the vehicle sold"; (5) Sections 12-605 and 12-606 of the Maryland Code of Commercial Law were violated in that an exact copy of the installment sales agreement was not delivered to the appellants at the time of signing and certain postsigning alterations were made on the agreement; and (6) the charge for the "extended warranty" was "hidden" in the cost of the vehicle, in violation of the Federal Truth in Lending Act (15 U.S.C. §§ 1601 *et seq.*).

We must first determine whether the appellants can assert their claims raised in counts one through four against the appellee. The appellee argues that its only relationship to the appellants is as a holder in due course of their consumer paper, the retail installment contract. We disagree.

To be able to assert the rights of a holder in due course as defined by Title 3 of the Maryland Uniform Commercial Code (see especially § 3-305), one must be a holder of a negotiable instrument as defined by Md. Com. Law Code Ann. § 3-104.[3] Even without the notice stamped on the face of the retail installment contract, it is a contract, not negotiable paper. If it were negotiable paper, the notice would have eliminated the possibility of anyone acquiring holder in due course status with respect to the paper.

---

**3.** "*§ 3-104. Form of negotiable instruments; 'draft'; 'check'; 'certificate of deposit'; 'note.'*

  (1) Any writing to be a negotiable instrument within this title must

    (a) Be signed by the maker or drawer; and

    (b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this title; and

    (c) Be payable on demand or at a definite time; and

    (d) Be payable to order or to bearer."

The notice required in specified consumer credit contracts under Md. Com. Law Code Ann. § 14-1302 is identical to that required for certain consumer credit transactions in or affecting interstate commerce by the Federal Trade Commission (FTC) Trade Regulation Rule, Preservation of Consumers' Claims and Defenses, 16 CFR § 433 (1980). Both the statute and the regulation make it an unfair or deceptive trade practice to take or receive a consumer credit contract which fails to contain the notice in at least ten point, boldface, type. The preservation of consumers' claims and defenses arises out of the legal effect the notice has on the consumer paper or contract, not directly from the statute or regulation. Thus, state law is applied in interpreting the effect of the notice.

The notice was intended to eliminate the possibility that the consumer's duty to pay would be independent of the seller's duty to fulfill his obligations where the seller "refers" customers to a creditor or is "affiliated" with the creditor. *See* "Statement of Enforcement Policy and Invitation to Comment in Regard to Trade Regulation Rule on Preservation of Consumers' Claims and Defenses," 41 Fed. Reg. 34,594 (August 16, 1976). It accomplishes this purpose by eliminating the holder in due course status for the consumer paper. The language of the notice deprives the paper of its negotiability in that it becomes a conditional promise to pay a sum certain; one requirement for asserting the rights of a holder in due course is that one must be a holder of negotiable paper. When a contract is involved, as in the case at bar, the language becomes a part of that contract.

That language subjects the creditor or assignee of the contract "to all claims and defenses which the debtor could assert against the seller." The creditor or assignee is "in the same position the seller would have been in. The rights between the buyer and the seller of goods are governed principally by Article 2 of the U.C.C. [Md. Com. Law Code Ann., Title 2]. And buyer's general remedies are catalogued in § 2-711. In addition, buyer's right to reject or revoke acceptance is set out in § 2-602 *et seq.*" J. White and R. Summers,

Handbook of the Law Under the Uniform Commercial Code, p. 1143 (2nd Ed. 1980).

The appellee urges that a debtor can only assert a defense in response to a suit by the creditor for collection of the debt. We disagree. The appellee, as the assignee of the contract, can be sued directly by the appellants, recovery being limited to the amounts paid by the debtor under the contract. To find otherwise would be to defeat the purpose of the notice and the clear import of the language.

The appellee further asserts that counts one through four fail to state a cause of action in that the appellants have failed to allege that any payments were made under the retail installment contract. The notice which was printed on the contract stated that "[r]ecovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." This is a limitation on the amount of recovery, but does not preclude the debtor from asserting a claim against the holder of the contract. We therefore reject appellee's argument on this point.

We now turn to a more particularized examination of the declaration.[4] The first count, according to appellants, asserts a claim for breach of implied warranty of merchantability. According to the appellee, it asserts three claims: breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. It is, of course, well settled that the failure to state separate causes of action in separate counts is improper and renders a declaration demurrable. Maryland Rule 340 C; *Kirchner v. Allied Contractors, Inc.,* 213 Md. 31 (1957).

The first count states in pertinent part:

"Included in the purchase price for said automobile, was a two year extended warranty which was specifically provided for new cars only. The vehicle

---

4. A transcript of the hearing before Judge Raine has not been provided. All that is before us is an order sustaining the demurrer to all counts. We shall, therefore, address all the issues raised by the appellee in its demurrer.

> sold, had approximately twelve thousand (12,000) miles on it at the time of the sale, that the vehicle was represented by agents and/or servants of the defendant, Monarch, as a new car and sold as such, being specifically referred to as a 'demonstrator model.'
>
> . . . .
>
> At the time of the sale, and delivery of said vehicle, the defendants, and both of them, had impliedly warranted the merchantability of the vehicle and further impliedly warranted that the vehicle would be fit for the ordinary purpose for which it was to be used, to the Thomas'. In this case, the particular purpose of the vehicle was for transportation and the defendants knew or should have known that said vehicle was not fit for that purpose."

Appellants then expound upon the defective and valueless nature of the car and the considerable sums of money spent for other means of transportation.

In our view, the appellants have not alleged a breach of an express warranty. If the two year "extended warranty" is the warranty appellee is referring to, the argument is without merit. The terms and conditions of the warranty have not been set forth. Without these, no conclusion can be drawn that such a cause of action exists. If the "express warranty" to which appellee refers is the statement that the car was new, the argument also fails. To establish an express warranty by affirmation, promise, description or sample, the representation must form the basis of the bargain. Md. Com. Law Code Ann. § 2-313. No such allegation was set forth in this count and thus no express warranty was set forth.

Appellee asserts that a claim for breach of implied warranty of fitness for a particular purpose was also set forth in the first count. Appellants alleged that the vehicle would be fit for the ordinary purpose for which it was to be used. This is a requirement of merchantability. Md. Com. Law Code Ann. § 2-314 (2) (c). As will be discussed below, lack of fitness for ordinary purposes can also under Maryland law

be grounds for claiming a breach of implied warranty of fitness for a particular purpose. *Myers v. Montgomery Ward & Co.,* 253 Md. 282 (1969).

Although the count could have been more artfully drafted to emphasize that the allegation of lack of fitness for ordinary purposes was specifically addressing a requirement of an implied merchantability, and not one of an implied warranty of fitness for a particular purpose, the count did not violate the rule against stating separate causes of action in one count. If we were to rule otherwise, we would be depriving claimants of an advantage the Court of Appeals has granted in *Myers, supra,* as an allegation of lack of fitness for ordinary purposes gives a party two causes of action.

Appellants alleged only one cause of action, breach of implied warranty of merchantability. With respect to the first count, no violation of Maryland Rules 340 C exists; and the demurrer should not have been sustained.

As to the second count, appellants allege that the implied warranty on the automobile of fitness for a particular purpose was breached in that it was not fit for transportation. Appellee argues that use of an automobile for transportation is not a particular purpose as described in Md. Com. Law Code Ann. § 2-315, but rather the ordinary purpose. The official comment to this section distinguishes the two purposes:

"A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." Md. Com. Law Code Ann. § 2-315, Official Comment 2.

While the official comment tends to support the appellee's position,[5] the Court of Appeals in *Myers v. Montgomery Ward & Co., supra,* undermined appellee's argument:

"[Art. 95B § 2-314 (c)] '* * * tends to overlap the warranty of merchantability with that of fitness for the purpose. We have seen that a seller is obligated to provide goods which meet the buyer's particular purpose as made known to the seller. Under this warranty, the buyer need not communicate to the seller the particular purpose for which the goods are intended, if the circumstances are such that the latter has reason to know that purpose. For example, one buying an automobile impliedly makes known the particular purpose for which the goods are intended — transportation. If the automobile will not run, both the warranties of fitness for the purpose and merchantability are breached, for such a defective car is not of fair average quality, nor is it fit for the purpose as impliedly made known to the seller.' " *Id.* at 295, quoting from Hawkland, A Transactional Guide to the Uniform Commercial Code (1964) § 1.19020702.

In light of *Myers,* we find that the demurrer should not have been sustained on the second count since a legally sufficient cause of action was stated.

As to count three, appellee did not raise any points in its demurrer other than those that have already been addressed.

Appellee first argues with respect to count four that appellants could not have relied on representations that the car they purchased was "of the same standard, quality [and] grade as a new automobile of the same year and model that was not sold as a demonstrator" since appellants bought a demonstrator model with 12,000 miles. We dismiss this

---

5. White and Summers in their "Handbook of the Law Under the Uniform Commercial Code," pp. 357-358 (2nd Ed. 1980), agree with the appellee's interpretation and cite several cases from other jurisdictions supporting this position.

argument as it raises a factual issue, *Beach v. Mueller,* 32 Md. App. 219 (1976), and further note that the argument was not asserted in the appellee's demurrer.

The second point, which was presented to the trial court, raised with respect to count four is that the request for punitive damages is not sufficiently supported by the allegations. Punitive damages cannot be awarded in a pure breach of contract,[6] but can be recovered in tort actions arising out of contractual relationships where actual malice is present. *General Motors Corp. v. Piskor,* 281 Md. 627 (1977); *Henderson v. Maryland Nat'l Bank,* 278 Md. 514 (1976); *H & R Block, Inc. v. Testerman,* 275 Md. 36 (1975).

If the tortious conduct, however, induced the innocent party to enter into the contractual relationship, the tort is not considered to have arisen *out of* the contract. *Wedeman v. City Chevrolet Co.,* 278 Md. 524 (1976). *See also Aeropesca Ltd. v. Butler Aviation,* 44 Md. App. 610, 624-627 (1980). Under these circumstances where a case for actionable fraud has been made out, the standard for recovering punitive damages is whether "the legal equivalent of actual malice [is] established . . . ." 278 Md. 532. The Court in *Wedeman, supra,* at 532, then defined this standard as "conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others."

In ruling on a demurrer, the court is required to accept as true all well pleaded facts and any reasonable inferences which may be drawn from these facts. *Schwartz v. Merchants Mort. Co.,* 272 Md. 305 (1974). In the case at bar, the appellants have alleged the five essential elements, *see James v. Goldberg,* 256 Md. 520, 528-529 (1970), necessary to assert a cause of action against the appellee for fraud. They have also alleged sufficient facts to show a wanton or reckless disregard for the rights of others, stating that the appellee knew or should have known "that the frame of the vehicle had been damaged and rewelded in such a manner

---

6. A breach of an express warranty is contractual in nature and would fall under this rule. Sims v. Ryland Group, Inc., 37 Md. App. 470, 475 (1977). *See also* Md. Com. Law Code Ann. §§ 2-714, 2-715.

that it was a safety hazard and could separate while the Plaintiff was driving on the highway." Sufficient facts and reasonable inferences have been alleged which may support a claim for punitive damages, thus withstanding the test of a demurrer. Furthermore, if the appellants can prove the allegations of direct participation by the appellee in the fraud, they are not limited in their recovery of punitive damages to the amounts paid under the contract.

Appellee in its brief raises an argument to support the granting of a demurrer as to count five, a claim based on Md. Com. Law Code Ann. §§ 12-605, 12-606, 12-630. This argument was not raised in appellee's demurrer and a copy of the hearing on the demurrer was not provided. As the record before us does not indicate that the argument was raised below, we shall not consider it. Maryland Rule 1085.

Finally, we consider the granting of the demurrer with respect to count six.[7] Appellants argue that the appellee should not be allowed to demur to this count. In the previous declaration the appellants had set forth in a count number five the same allegations as are stated in count six of the amended declaration, the subject of this appeal. The demurrer to count five of the prior declaration was overruled, leaving that count the only remaining one of the declaration. Appellee filed a general issue plea to the count. Appellants then filed the amended declaration. In filing this declaration which reiterated the allegations of the prior count without any reference to the previous declaration, the appellants withdrew the only remaining count of their previous declaration. *Conklin v. Schillinger,* 255 Md. 50, 75-76 (1969).

The demurrer to count six of the amended declaration was sustained. Count six asserted a violation of the Federal Truth in Lending Law, 15 U.S.C. §§ 1601 *et seq.* The allegation arose from the charge for an "extended warranty." This charge of $246 was included on the retail

7. Although the appellee demurred to "Count V," we will assume this was a typographical error and treat it as a demurrer to count six in that the entire argument was specifically addressed to the allegations contained in count six.

installment contract, a copy of which served as the disclosure statement in the purchase price of the automobile. The cost was not specifically disclosed as a finance charge or as another charge included in the amount of credit extended. In other words, the fact that the appellants were being charged $246 for this "extended warranty" and that this sum was added to the cash price of the car did not appear on the face of the retail installment contract. On June 19, 1978, the appellee sent the appellants a notice informing them that "the amount of $246.00 [was] being financed on [their] contract."

Appellants alleged in their declaration that this "extended warranty" was "held out" as a form of "insurance" and as insurance, it should have been disclosed as part of the finance charge:

> "The Plaintiff believes and therefore avers that the manner in which same was charged and purchased by the Plaintiffs, in a relatively hidden manner, requires pursuant to the Federal Truth in Lending Law (15 U.S. CODE 1601 et seq.) that the cost of same be disclosed (15 U.S.C. Section 1638) and that the premium for said extended warranty which is to be included in the finance charge unless a clear and specific statement is furnished by the defendants to the Plaintiff, setting forth the cost of same, and giving Plaintiff a choice as to who shall write the insurance or whether insurance shall be written at all at the time of the execution of the installment sales contract (15 U.S.C. Section 1605 (a))."

The determination of a finance charge is defined at 15 U.S.C. § 1605. Subsection (a) reads as follows:

> "§ 1605. Determination of finance charge — Definition
>
> (a) Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be deter-

mined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit, including any of the following types of charges which are applicable:

(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.

(2) Service or carrying charge.

(3) Loan fee, finder's fee, or similar charge.

(4) Fee for an investigation or credit report.

(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss."

Appellee argues that a warranty cannot be equated with insurance. It further cites an interpretation by the Board of Governors of the Federal Reserve System on service contracts:

"You ask whether the existence and cost of such a service contract must be disclosed in order to exclude such cost from the finance charge revealed on the credit sale disclosure statement. Since the cost of the service contract is not 'imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit,' it is not a finance charge within the meaning of § 226.4 of Regulation Z. It therefore need not be itemized or described in order to be excluded from the finance charge.

You ask further whether the cost of the service contract should be disclosed as a part of the 'cash price' under § 226.8 (c) (1) or whether it should be disclosed as an 'other charge' under § 226.8 (c) (4). 'Cash price' is defined in § 226.2 (n) to mean the price at which a creditor offers to sell for cash the

property or services which are the subject of the consumer credit transaction and may include the cash price of accessories or services related to the sale. Since the service contract can be viewed as a service related to the sale, it appears to staff that inclusion of the cost in the cash price is permissible under Regulation Z. You will note, however, that § 226.2 (n) says that the cash price 'may include the cash price of accessories or services' and does not require that such cost be included in the cash price. Thus, it appears that these costs may also be treated as 'other charges' under § 226.8 (c) (4), since they are included in the amount financed but are not part of the finance charge." 12 CFR § 226 Appendix, Official Staff Interpretations, FC-0019, November 12, 1976.

We note that the holding in *Carney v. Worthmore Furniture, Inc.,* 561 F.2d 1100 (4th Cir. 1977), reaches another result on service contracts. Under the facts of *Carney,* the court found that a charge for a service policy on the freezer, which was the item upon which credit was extended, was "inextricably intertwined with Worthmore's [the lender] interest as a creditor" as to constitute a finance charge "incident to or as a condition of the extension of credit." The Fifth Circuit has also followed this holding under a similar set of circumstances. *See Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092 (5th Cir. 1978).

We agree with the board of governors that most service contracts are not imposed directly or indirectly by the creditor as incident to or as a condition of the extension of credit, but recognize that there are exceptions. Cases can be made out against a creditor's demonstrating that the creditor's practices in extending a service policy fall within the definition of a finance charge. Debtors should not be precluded from pursuing such actions.

Finally, we must determine whether the appellants in the case at bar allege facts sufficient to constitute a cause of action under 15 U.S.C. § 1605 (a). Appellants seem to base

their claim on the "extended warranty" being equated with a form of insurance. This is not the basis upon which charges for service contracts [8] have been found to be finance charges; insurance, as the appellee correctly points out, has another meaning. Appellants should have alleged that it was a charge imposed directly or indirectly as incident to or as a condition of the extension of credit. We cannot find any statement in this count which approaches even an inference of the necessary allegation. The demurrer was properly sustained on this count. *Hooke v. Equitable Credit Corp.,* 42 Md. App. 610, 612 (1979).

Leave to amend this count was not granted. Although leave to amend is within the sound discretion of the court, *Crowe v. Houseworth,* 272 Md. 481, 489 (1974), the Court of Appeals and this Court have held that leave to amend should be generously granted. We think the appellants should be granted leave to amend this count. They may be able to cure the defective pleading and state a cause of action. Furthermore, this was the first time that a demurrer to this count was sustained.

> *Judgment reversed; case remanded for trial on counts 1 — 5 and for appellants to be granted leave to amend count 6.*
>
> *Appellants to pay 1/6 costs of this appeal; appellee to pay 5/6 the costs.*

---

**8.** The terms of the "extended warranty" are not before us; but we are assuming that this "extended warranty" is in essence a service contract, an agreement to repair certain defects free of charge for a specified period of time.