Donald RIGGS, et al.

v.

ANTHONY AUTO SALES, INC., et al.,

consolidated with

Dorothy Haymon, et al.

v.

Anthony Auto Sales, Inc., et al.

Civil Action Nos. 97–0507, 97–0520.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Aug. 7, 1998.

Joseph A. Gregorio, Bossier City, LA, David A. Szwak, Bodenheimer Jones & Szwak, Shreveport, LA, for plaintiffs.

Charles D. Anthony, Texarkana, TX, pro se.

George E. Harp, Shreveport, LA, for James Anthony, Jeri Byrd, Mary Bison, defendants.

Kirk A. Patrick, III, Mary G. Erlingson, Crawford & Lewis, Baton Rouge, LA, for ASC Finance Corp., LSI Financial Group.

Kirk A. Patrick, III, Mary G. Erlingson, Crawford & Lewis, Baton Rouge, LA, Michael H. Ellis, Stephen D. Marx, Chehardy Sherman et al., Metairie, LA, for First Bank of The Americas, Banco De Bogota new york Agency, defendants.

### MEMORANDUM RULING

STAGG, District Judge.

Before the court are two motions for summary judgment filed by the plaintiffs in the above consolidated actions. For the reasons stated below, the plaintiffs' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**. Also before the court is a motion for partial summary judgment filed by Banco De Bogota New York Agency ("Banco De Bogota"). For the reasons stated below, Banco De Bogota's motion is **GRANTED**.

## I. BACKGROUND

### A. Facts.

Anthony Auto Sales, Inc. ("Anthony Auto"), was investigated by various agencies after a local television station aired an expose, alleging that Anthony Auto was selling cars with altered odometers. The investigation revealed that Anthony Auto had sold a substantial number of vehicles after altering or "rolling back" the odometers to display mileage considerably less than the actual mileage. See Record Documents 44, Ex. 1 at 6–9, Civil Action No. 97–0520, and 33, Ex. 1 at 6–9, Civil Action No. 97–0507. At the time of the sale of the autos, disclosure statements provided by Anthony Auto inaccurately stated the mileage and misrepresented the condition and use of the vehicles.

Each of the plaintiffs purchased an automobile from Anthony Auto that possessed an odometer which had been altered while in Anthony Auto's possession. In connection with the auto sales, the plaintiffs executed and signed various documents, including sales invoices, retail installment contracts, security contracts, consumer credit contracts, and financing applications. Various lenders purchased installment contracts or consumer credit contracts from Anthony Auto through an indirect lending relationship. These lenders included ASC Finance Corporation a/k/a ASC Financial Group, Inc., LSI Financial Group, LSI Holdings, Inc., LSI Financial Group, Inc., Dealer Finance Corporation of America, and First Bank of the Americas (who has since been substituted by Banco De Bogota) (hereinafter collectively referred to as "the lenders").

### B. Procedural History.

On March 13, 1997, Donald Riggs, Roberto Garcia, Elise Garcia, James P. Burns, Connie P. Burns, Mark Sarubbi, Laurie Sarubbi, Bobby G. Beason, Penny Beason, James Shipp, Terri L. Martin, Monica Perkins, Jamerson L. Johnson, Gregory J. Mace, Nikki M. Ward Sanders, Linda L. Carmack, Kenny W. Howard, Judy Howard, Gary W. Mays, Ida M. Ellis and Gregory Huff (hereinafter collectively referred to as "the Riggs plaintiffs")[1] filed suit against Anthony Auto, Charles Anthony, James Anthony, Jeri Byrd, Carroll Ashley, Mary Bison, ASC Finance Corporation a/k/a ASC Financial Group, Inc., First Bank of the Americas, and LSI Financial Group. See Record Document 1, Civil Action No. 97–0507. On May 7, 1997, ASC Finance Corporation and LSI Financial Group filed an answer to the Riggs plaintiffs' complaint, denying any liability thereunder. See Record Document 8, Civil Action No. 97–0507. On May 30, 1997, First Bank of the Americas filed an answer to the Riggs plaintiffs' complaint, also denying liability. See Record Document 9, Civil Action No. 97–0507. On July 31, 1997, Charles Anthony filed an answer to the Riggs plaintiffs' complaint, denying liability. See Record Document 20, Civil Action No. 97–0507. However,

---

1. Numerous other plaintiffs have since been added to the suit. See Docket Sheet, Civil Action No. 97–0507.

on October 24, 1997, Charles Anthony filed an amended and supplemental answer to the Riggs plaintiffs' complaint, admitting all of the allegations therein.[2] *See* Record Document 29, Civil Action No. 97–0507.

On March 14, 1997, Dorothy Haymon, Arthur Haymon, Roland Dunn, Eduardo Dunn, David R. Conly, Leslie James Gardner, Vicki Gardner, Rhonda K. Hammett, Charles E. Cannon, Jr., and Bobbie Collins (hereinafter collectively referred to as "the Haymon plaintiffs"), filed suit in this court against Anthony Auto, Charles Anthony, James Anthony, Carroll Ashley,[3] Jeri Byrd, Mary Bison, First Bank of the Americas, Summit Acceptance Corporation[4] and LSI Financial Group, seeking recovery as victims of an odometer rollback scheme. *See* Record Document 1, Civil Action No. 97–0520. On May 30, 1997, First Bank of the Americas filed an answer to the Haymon plaintiffs' complaint, denying any liability thereunder. *See* Record Document 12, Civil Action No. 97–0520. On June 3, 1997, LSI Financial Group filed an answer to the Haymon plaintiffs' complaint, also denying liability. *See* Record Document 13, Civil Action No. 97–0520. On August 13, 1997, Charles Anthony filed an answer to the Haymon plaintiffs' complaint, denying any liability thereunder. *See* Record Document 27, Civil Action No. 97–0520. However, on October 24, 1997, Charles An-

thony filed an amended and supplemental answer to the Haymon plaintiffs' complaint, admitting of the allegations therein.[5] *See* Record Document 36, Civil Action No. 97–0520.

On January 30, 1998, the Riggs plaintiffs filed a motion for summary judgment, contending that the court should impose liability upon the defendants[6] on all claims and issue a judgment declaring that the liability of their lenders is not limited under the provisions of 16 C.F.R. § 433.2 (commonly referred to as "the FTC holder rule") with regard to attorney's fees and court-related costs. *See* Record Document 33, Civil Action No. 97–0507. On January 30, 1998, the Haymon plaintiffs filed an identical motion for summary judgment, containing the aforementioned arguments. *See* Record Document 44, Civil Action No. 97–0520. On February 26, 1998, Banco De Bogota filed an opposition to both the Riggs and Haymon plaintiffs' motions, contending that its liability, if any, is limited by the FTC holder rule. *See* Record Documents 44, Civil Action 97–0507, and 54, Civil Action No. 0520. No other defendant filed an opposition to the Haymon or Riggs plaintiffs' motion for summary judgment.

On February 2, 1998, Banco De Bogota filed two motions for partial summary judgment—one against the Riggs plaintiffs and

---

**2.** In an order signed by Magistrate Judge Robert H. Shemwell, this document was subsequently stricken from the record for unrelated procedural deficiencies. *See* Record Document 30, Civil Action No. 97–0507.

**3.** On September 4, 1996, a federal grand jury in Shreveport, Louisiana returned a fifty-one count indictment against Charles Anthony, Jimmy Anthony, and Carroll Ashley. All charges stemmed from the odometer rollback scheme that had taken place at Anthony Auto. All of the defendants were charged with being members of a conspiracy to roll back the odometers of used cars (18 U.S.C. § 371); odometer tampering (15 U.S.C. § 1984 and 1990c, reworded and recodified at 49 U.S.C. § 32703(2) and 32709(b), effective July 5, 1994); and mail fraud (18 U.S.C. § 1341). Charles Anthony was also charged with providing false odometer certification (15 U.S.C. § 1988 and 1990c) and with one count of obstruction of justice (18 U.S.C. § 1503).

**4.** On January 26, 1998, Magistrate Judge Roy S. Payne signed an order dismissing the plaintiffs' claims against Summit Acceptance Corporation

without prejudice. *See* Record Document 43, Civil Action No. 97–0520.

**5.** In an order signed by Magistrate Judge Robert H. Shemwell, this document was also subsequently stricken from the record for unrelated procedural deficiencies. *See* Record Document 37, Civil Action No. 97–0520.

**6.** The plaintiffs' motion for summary judgment was specifically directed only towards defendants Anthony Auto Sales and Charles Anthony (referred to by the plaintiffs as "defendants Anthony") and the various lenders (referred to by the plaintiffs as "defendant lenders"). Since the other defendants in the suit were only vaguely referred to in the motion, the court finds that they did not receive proper notice that they were subject to summary judgment. Therefore, the court will address the plaintiffs' motion for summary judgment only as it pertains to defendants Anthony Auto Sales, Charles Anthony and the various lenders.

one against the Haymon plaintiffs—requesting the court to declare that the plaintiffs recovery, if any, is limited and shall not exceed the amounts paid by plaintiffs on their respective consumer credit contracts. *See* Record Documents 35, Civil Action No. 97–0507, and 46, Civil Action No. 97–0520. On February 27, 1998, both the Riggs and Haymon plaintiffs filed an opposition to the motion. *See* Record Documents 42, Civil Action No. 97–0507 and 52, Civil Action No. 97–0520.

On March 25, 1998, Magistrate Judge Roy S. Payne entered an order consolidating the two cases. *See* Record Document 47, Civil Action 97–0507. Therefore, the following discussion will encompass the motions filed in both actions.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. *See Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993).

### B. Federal And State Odometer Laws Were Violated.

As the motions filed by both sets of plaintiffs were essentially identical, the court will dispose of the motions together. Additionally, as the motions for summary judgment filed by Banco De Bogota in both the Haymon and Riggs actions deal with the same issues as those presented in the motions filed by the plaintiffs in those actions, this ruling will dispose of Banco De Bogota's motions as well.

■ The plaintiffs seek to hold Charles Anthony and Anthony Auto liable pursuant to 15 U.S.C. § 1988 [7] (hereinafter referred to as the "federal odometer act").[8] The plaintiffs allege, *inter alia,* that Anthony Auto and Charles Anthony violated 15 U.S.C. §§ 1988 and 1989 [9], which together prohibit the mak-

---

7. Section 1988 states, in pertinent part:

(a) Promulgation of rules

[T]he Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:

(1) Disclosure of the cumulative mileage registered on the odometer.

(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.

. . . . .

(b) Violations of rules and giving false statements to transferees prohibited

No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule.

8. Since the action was instituted, the federal odometer act was reenacted and recodified as 49 U.S.C. § 32705.

9. Section 1989, recodified as 49 U.S.C. § 32710, states in pertinent part:

(a) Any person who, with **intent to defraud,** violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.
(emphasis added).

ing of false statements as to the actual mileage on an automobile with the intent to defraud.

The Odometer Act provides for a civil penalty against "any person who, with intent to defraud, violates any requirement under this subchapter." 15 U.S.C. § 1989. Charles Anthony has admitted that he intended to defraud the plaintiffs, and the evidence shows that he did, in fact, defraud the plaintiffs. *See* Record Documents 51, Civil Action No. 97–0507, and 44, Ex. 2, Civil Action No. 97–0520. Furthermore, in his amended and supplemental answers to the plaintiffs' complaints, Charles Anthony admitted all of the allegations therein. *See* Record Documents 29, Civil Action No. 97–0507 and 36, Civil Action No. 97–0520.[10] Therefore, the court holds that Anthony Auto Sales and its owner, Charles Anthony, are liable to the plaintiffs for violating the federal odometer act by defrauding the plaintiffs with regard to the actual mileage on their vehicles.

Louisiana also has a statute prohibiting odometer tampering, La.R.S. 32:726.1, entitled "Tampering With or Altering Odometers Prohibited; Penalties."[11] The statute provides, in pertinent part:

> A. No person shall **knowingly** tamper with, adjust, alter, change, set back, disconnect or fail to connect the odometer of any motor vehicle, or cause any of the foregoing to occur to an odometer of a motor vehicle, so as to reflect a lower mileage than the true mileage driven by the motor vehicle....
>
> .    .    .    .    .
>
> H. (3) A new or used car dealer who violates the provisions of this Section shall be subject to a civil penalty of not more than one thousand dollars....

10. *But see* notes 2 and 5, *supra,* where this court noted that these documents were subsequently stricken from the record.

11. Title 15, United States Code, section 1991, which has since been reworded and recodified at 49 U.S.C. § 32711, provides:

This subchapter does not—

(emphasis added). The evidence, including Charles Anthony's affidavit and his answer to the plaintiffs' complaint, indicates that Charles Anthony, through his auto dealership, Anthony Auto, knowingly tampered with, adjusted, altered, changed, set back, or caused the odometer rollbacks to occur. Therefore, the court holds that Charles Anthony and Anthony Auto violated the Louisiana statute prohibiting odometer tampering and that they are liable to the plaintiffs thereunder.

**C.  The Lenders Are Liable Pursuant To The FTC Holder Rule.**

The FTC Holder Rule, 16 C.F.R. § 433.2, provides in part:

> In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly to:
>
> (a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:
>
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EX-

(1) annul, alter, or affect the laws of any State with respect to the disconnecting, altering, or tampering with odometers with the intent to defraud

.    .    .    .

except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

CEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

In adopting this rule, the FTC abrogated the holder in due course rule [12] in consumer credit transactions, preserving the consumer's claims and defenses against the creditor-assignee. The FTC Holder Rule was, therefore, designed to reallocate the cost of seller misconduct to the creditor, who is in a better position to absorb the loss or recover the cost from the guilty party—the seller.

The finance contracts signed by the plaintiffs and assigned to the lenders by Anthony Auto contained the language required by the FTC Holder Rule. *See* Record Documents 33, Ex. 4, Civil Action No. 97–0507 and 44, Ex. 4, Civil Action No. 97–0520. Accordingly, the plaintiffs are entitled to assert against their lenders any claims and defenses which they have against Anthony Auto.[13] *See* 16 C.F.R. § 433.2; *Maberry v. Said,* 911 F.Supp. 1393 (D.Kan.1995); *Eachen v. Scott Housing Systems, Inc.,* 630 F.Supp. 162, 166 (D.Ala.1986). The court must now determine what amounts the plaintiffs are entitled to recover from their respective creditors.

**12.** Under the holder in due course principle, the creditor could "assert his right to be paid by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale." 40 Fed.Reg. at 53507.

**13.** Regulations promulgated by the FTC implementing the FTC Holder Rule provide, in part:
[A] consumer can ... (2) maintain an action against a creditor who has received payments for a return of monies paid on account. The latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified.
Preservation of Consumers' Claims and Defenses, Final Regulation, Proposed Amendment and Statement of Basis and Purpose, 40 Fed.Reg. 53524 (Nov. 18, 1975). The Official Comment to 16 C.F.R. § 433.2 states that "[c]onsumers will not be in a position to obtain affirmative recovery from a creditor, unless they have actually commenced payment and received little or nothing of value from the seller." 40 Fed.Reg. 53527. Relying on the language of the Official Comment, many cases hold that, absent a showing that the claimants received little or nothing of value, the plaintiffs are not entitled to an affirmative recovery of amounts paid pursuant to their respective agreements. *See* 40 Fed.Reg. at 53527; *Felde v. Chrysler Credit Corp.,* 219 Ill.

In explaining the mechanics of the FTC rule, the FTC's Bureau of Consumer Protection stated:

> [The FTC Holder Rule] limits the consumer to a refund of monies paid under the contract, in the event that an affirmative money recovery is sought. In other words, the consumer may assert, by way of claim or defense, a right not to pay all or part of the outstanding balance owed the creditor under the contract; but the consumer will not be entitled to receive from the creditor an affirmative recovery which exceeds the amounts of money the consumer has paid in.

. . . . .

> The limitation on affirmative recovery does not eliminate any other rights the consumer may have as a matter of local, state, or federal statute.

. . . . .

> The Rule does apply to all claims or defenses connected with the transaction, whether in tort or contract. When, under state law, a consumer would have a tort

App.3d 530, 536, 162 Ill.Dec. 565, 580 N.E.2d 191, 196 (Ill.App. 2 Dist.1991); *Ford Motor Credit Co. v. Morgan,* 404 Mass. 537, 543, 536 N.E.2d 587, 590 (Mass.1989). The issue of whether a showing of rescission and restitution is a necessary precedent to such recovery appears to be disputed, as various state cases have reached conflicting results. *See Home Savings Association v. Guerra,* 733 S.W.2d 134 (Tex.1987); *Thomas v. Ford Motor Credit Co.,* 48 Md.App. 617, 429 A.2d 277 (Md.App.1981); *Hempstead Bank v. Babcock,* 115 Misc.2d 97, 453 N.Y.S.2d 557 (N.Y.Sup.1982); *Tinker v. De Maria Porsche Audi, Inc.,* 459 So.2d 487 (Fla.App.1984). However, in *Oxford Finance Companies v. Velez,* 807 S.W.2d 460, 463 (Tex.App.1991), the court noted that the notice does not say that a seller will be liable for the buyer's damages only if the buyer received little or nothing of value under the contract, nor does it purport to limit a creditor/assignee's liability in such fashion. Therefore, the Texas court concluded that the plaintiff could obtain affirmative relief from the lender without a finding that she received little or nothing of value under the contract. This court agrees with the *Oxford Finance* court and finds that a plaintiff should not be required to first prove that she has received little or nothing of value in order to recover from her creditor, as the FTC notice does not advise the creditor that little or no value must have been received in order for the consumer to assert any claims against it.

claim against the seller that would defeat a seller's right to further payments or allow the consumer to recover affirmatively, this claim is preserved against the holder. This is, of course, subject to the **limitation of recovery under this Rule to the amounts paid in.**

41 Fed.Reg. at 20023–24 (emphasis added).

■ The plaintiffs argue that the lenders should be held liable for "plaintiffs' attorneys' fees, court costs and related litigation expenses which plaintiffs may recover by law, which may exceed [each lender's] FTC Holder Notice liability," despite the fact that the rule expressly limits the lenders' liability to "amounts paid in." Record Document 25 at 3. The plaintiffs cite three Texas state court opinions to support their proposition. *See Kish v. Van Note,* 692 S.W.2d 463 (Tex.1985); *Home Savings Association v. Guerra,* 733 S.W.2d 134 (Tex.1987); *Oxford Finance Companies v. Velez,* 807 S.W.2d 460 (Tex. App.1991).

In *Oxford Finance Companies v. Velez,* 807 S.W.2d 460 (Tex.App.1991), the court allowed the plaintiff to recover attorney's fees from the lender, in excess of the amounts paid in, relying on *Home Savings Association v. Guerra,* 733 S.W.2d 134 (Tex. 1987),[14] but limited that recovery to only those attorney's fees that resulted from her own attorney's pursuit of claims against the lender. *See id.* at 465. This court disagrees with the conclusion reached in *Oxford.* The plain language of the FTC notice included in the plaintiffs' contracts indicates that the plaintiffs' recovery should be limited to the "amounts paid by the debtor hereunder." 16 C.F.R. § 433.2(a). While allowing the debtor to assert affirmative claims against the finance company, the purpose of this language is clearly to "not permit a consumer to recover more than he has paid . . .". M. Smith, *Preserving Consumers' Claims and Defenses,* 63 A.B.A.J. 1400, 1402 (1977). *See also* 40

Fed.Reg. 53506, 53527; *Eachen v. Scott Housing Systems, Inc.,* 630 F.Supp. 162, 164–65 (M.D.Ala.1986). A rule of unlimited liability would place the creditor in the position of an insurer or guarantor of the seller's performance. This court does not construe this to be the purpose of the FTC rule.[15] Accordingly, this court holds that a creditor's derivative liability for seller misconduct under the FTC rule is limited to the amount paid by the consumer under the credit contract. Therefore, with respect to each plaintiff, each lender's liability is limited to the amount paid to it by that plaintiff. In other words, each plaintiff may recover from their lender their actual damages times three or $1,500, whichever is greater, the costs of the action, and their lender's pro rata share of reasonable attorney's fees, provided that the maximum recovery by any plaintiff may not exceed the amount paid the lender by that plaintiff. *See* 15 U.S.C. § 1989.

### III. CONCLUSION

Anthony Auto Sales, its owner, Charles Anthony, and the lenders are jointly and severally liable to the plaintiffs to the extent of each plaintiff's injury under both the federal and state odometer laws. As a result of the FTC Holder Rule, the lenders are liable for the amounts received from the plaintiffs under their individual consumer credit contracts. This liability includes attorney's fees and costs, subject to the cap of the amount that the plaintiffs have paid to the lenders. Accordingly, the plaintiffs' motion for summary judgment is **GRANTED** to the extent that it requests the court to issue a finding regarding the liability of the defendants. However, the plaintiffs' request for a declaration that the lenders' liability is not capped by the FTC Holder Rule is **DENIED.** Consequently, Banco De Bogota's motion for partial summary judgment is **GRANTED.**

---

**14.** It should be noted that the *Home Savings* court stated that because the creditor did not object to the "broad attorneys fees issue," it was found to have waived any complaint it might have had on the court's failure to segregate the attorney's fees. *See Home Savings,* 733 S.W.2d 134, 137 (Tex.1987). This is obviously distinguishable from the issue in the case *sub judice.*

**15.** Other courts have also interpreted the language of section 433.2 to limit the amount of recovery to amounts paid by the debtor under the credit contract. *See, e.g., Tinker v. De Maria Porsche Audi, Inc.,* 459 So.2d 487 (Fla.App. 3 Dist.1984); *Thomas v. Ford Motor Credit Co.,* 48 Md.App. 617, 429 A.2d 277 (Md.App.1981).