Charles EACHEN and Mary Eachen, Plaintiffs,

v.

SCOTT HOUSING SYSTEMS, INC., etc., et al., Defendants.

Civ. A. No. 85–T–1205–E.

United States District Court, M.D. Alabama, E.D.

Feb. 20, 1986.

---

·Alan W. Heldman and Hollinger F. Barnard Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for Citicorp.

Robert T. Meadows, III, Harper & Meadows, Auburn, Ala., for Scott Housing.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiffs Charles and Mary Eachen, two consumers, have brought this lawsuit against defendants Citicorp Acceptance Company and Scott Housing Systems, Inc., charging these defendants with breach of warranty. This cause is now before the court on Citicorp's November 20, 1985, motion for summary judgment, as amended. For reasons that follow, the motion is due to be granted in part and denied in part.

### I.

The material facts of this case are undisputed. Charles and Mary Eachen purchased a Scott Showcase Mobile Home from Lawler Mobile Homes, Inc. of Phenix City, Alabama on June 10, 1983. The home was purchased on credit. In addition to a bill of sale, the Eachens and Lawler Mobile Homes signed an Alabama Mobile Home Retail Installment Contract and Security Agreement. That agreement contained the following language, as required by Federal Trade Commission (FTC) regulation, 16 C.F.R. § 433.2 (1984) ("Preservation of Consumer's Claims and Defenses"):

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR IS LIMITED TO AMOUNTS PAID BY THE DEBTOR HEREUNDER.

On the day of sale, Lawler Mobile Homes assigned the agreement to Citicorp.

The Eachens became dissatisfied with the mobile home because it allegedly contained serious defects in material and

Charles C. Carter, Columbus, Ga., for plaintiffs.

workmanship. Both Lawler Mobile Homes and Scott Housing, the manufacturer of the home, attempted to remedy the alleged defects, but the Eachens remained dissatisfied. Sometime before September 1985, Lawler filed for bankruptcy, thereby automatically barring any legal proceeding against it. 11 U.S.C.A. § 362.

On September 18, the Eachens filed suit in the Circuit Court of Lee County, Alabama against Citicorp and Scott Housing for breach of warranty. Citicorp then removed the Eachens' lawsuit to this court pursuant to the court's diversity and removal jurisdiction. 28 U.S.C.A. §§ 1332, 1441.

## II.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). Citicorp argues that, on the above undisputed facts, it is entitled to summary judgment as a matter of law against the Eachens on their warranty claim. Citicorp proffers two legal theories in support of its argument.

### A. Citicorp's First Theory

Citicorp's first theory is that it is entitled to full summary judgment because, as assignee of the seller, it can be liable under Alabama law for the Eachens' claim only as a matter of *defense to* or *set-off against* a claim by the assignee. Since Citicorp has instituted no legal proceedings against the Eachens to collect unpaid funds, it continues, the Eachens are barred from maintaining this lawsuit. Citicorp rests this argument on the final phrase in a provision of the Alabama Consumer Finance Law:

> With respect to a consumer credit sale or consumer lease, an assignee of the rights of the seller or lessor is subject to all claims and defenses of the buyer or lessee against the seller or lessor arising out of the sale or lease, notwithstanding an agreement to the contrary, but the assignee's liability under this section may not exceed the amount owing to the assignee at the time the claim or defense is asserted against the assignee. *Rights of the buyer or lessee under this section can only be asserted as a matter of defense to or set-off against a claim by the assignee.*

1975 Alabama Code § 5–19–8 (emphasis added).

■ Citicorp's first theory lacks merit because the Eachens premise their lawsuit not on Alabama law but rather on the 1975 FTC regulation reported at 16 C.F.R. § 433.2 (1984) ("Preservation of Consumer's Claims and Defenses"). This federal regulation makes it "an unfair or deceptive act or practice" under the Federal Trade Commission Act, 15 U.S.C.A. § 41, *et seq.*, for a seller, directly or indirectly, to take or receive a consumer credit contract which fails to contain the provision regarding claims and defenses set forth in the consumer contract issued to the Eachens.

This regulation was specifically intended, according to the FTC, to provide that "a consumer can ... maintain an *affirmative action* against a creditor who has received payments for a return of monies paid on account." 40 Fed.Reg. 53524 (1975) (emphasis added). The FTC expressly rejected amendments to the regulation that would limit the consumer to a "defense" or "set-off." The FTC stated,

> Many industry representatives suggested that the rule be amended so that the consumer may assert his rights only as a matter of defense or setoff against a claim by the assignee or holder. Industry representatives argued that such a limitation would prevent the financer from becoming a guarantor and that any limitation in the extent of a third party's liability was desirable.

> The practical and policy considerations which militate against such a limitation on affirmative actions by consumers are far more persuasive.

40 Fed.Reg. 53526 (1975) (footnotes omitted). The FTC observed, among other things, that if the consumer is limited to a purely defensive position the assignee-creditor may elect not to sue for the balance

due when the consumer's defenses seem to have merit and the seller is judgment proof. The FTC observed that

> The most persuasive reason for not limiting a consumer to a wholly defensive position is the situation referred to in Professor Guttman's testimony. A consumer may stop payment after unsuccessfully attempting resolution of a complaint with the seller, or he may have finally discovered that the seller has moved, gone out of business or reincorporated as a different entity. During this period the consumer may have been making payments to the financer in good faith, notwithstanding the prior existence of defenses against the seller.

> If the consumer stops payment, he may be sued for the balance due by the third party financer. The financer may, however, elect not to bring suit, especially if he knows that he would be unable to implead the seller and he knows the consumer's defenses may be meritorious. Under such circumstances the financer may elect to not sue in the hopes that the threat of an unfavorable credit report may move the consumer to pay.

40 Fed.Reg. 53527 (1975). Indeed, assuming that the Eachens can prevail on their warranty claim—an assumption which this court must make on Citicorp's motion for summary judgment—it appears that the objectionable scenario described by the FTC could very well be applicable here unless the regulation is enforced.

■ Citicorp argues, nonetheless, that the limitation in Alabama's section 5–19–8 should be engrafted onto the FTC regulation. It supports this argument by citing the following isolated language from an introductory paragraph to certain FTC Enforcement Guidelines issued in 1976:

> The manner and procedure by which a buyer may assert claims and defenses is governed by the terms of the contract and by applicable state law.

41 Fed.Reg. 34594 (1976). Citicorp's argument is meritless.

First, Citicorp has lifted this language out of 1976 Enforcement Guidelines addressing the regulation's definition of a "purchase money loan." Allowing affirmative actions by consumers against assignee-creditors was not addressed in these Guidelines. Therefore, it is apparent that the Guidelines and the language in them were not intended as an authoritative statement on the extent to which consumers could bring actions against assignee-creditors under the regulation.

But more importantly, it is apparent that when the quoted language from the Guidelines is read in conjunction with the history and purposes of the FTC regulation, the language is intended to mean that one must look to state law and the terms of the contract to determine the "manner and procedure" by which a consumer may affirmatively maintain an action against a creditor. For example, as noted by the FTC, an affirmative action against a creditor "will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified. The most typical example of such a case would involve non-delivery, where delivery was scheduled after the date payments to a creditor commenced." 40 Fed.Reg. 53524 (1975). The FTC staff has also observed that

> Where a local jurisdiction has a two-year statute of limitations on contract claims, such claims and defenses would be extinguished after two years. Where a local jurisdiction imposes a rule analogous to laches or equitable estoppel, consumer claims and defenses would continue to be subject to such a limitation, and the consumer would have a duty to notify the potential defendant of his contention within a reasonable time.

41 Fed.Reg. 20024 (1976).

Moreover, to adopt Citicorp's understanding of the quoted language would mean that the FTC had authorized individual states to rescind the 1975 regulation to the extent the regulation specifically authorized consumers to bring affirmative actions against assignee-creditors. This drastic result is not supported by the regulation either on its face or by its history. The

regulation neither expressly nor impliedly provides that states are authorized to rescind the 1975 regulation, in whole or in part; nor does a searching review of the history of the regulation uncover anything that would indicate such authorization, either expressly or impliedly.

The Eachens have requested that the court declare section 5–19–8 unconstitutional because it conflicts with the FTC regulation. The court declines this invitation for two reasons. First, there is no conflict because, as the court has demonstrated above, section 5–19–8's limitation on affirmative actions by consumers should not be engrafted on the FTC regulation and the section is therefore not applicable to the claim presented here. Second, there is no conflict because, by its own language, section 5–19–8's limitation is applicable only to consumer claims brought under that section. The section states that "[r]ights of the buyer or lessee *under this section* can only be asserted as a matter of defense to or set-off against a claim by the assignee" (emphasis added). Here, the Eachens are not relying on section 5–19–8.

The Eachens may therefore assert their warranty claim against Citicorp under the FTC regulation, irrespective of whether Citicorp has filed a lawsuit against the Eachens.

### B.  Citicorp's Second Theory

Citicorp's second theory is that it is entitled to partial summary judgment prohibiting the Eachens from recovering on their warranty claim more than they have paid under the contract to Citicorp. The Eachens concede this theory. The contract expressly provides that recovery by the debtor against an assignee-creditor is limited to amounts paid by the debtor.

The court will therefore grant partial summary judgment to Citicorp prohibiting the Eachens from recovering from Citicorp more than they have paid to Citicorp under the contract.

An appropriate order will be entered.