FORD MOTOR CREDIT COMPANY *vs.* ROSE A. MORGAN
& another.[1]

Suffolk.  November 10, 1988. — April 10, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Motor Vehicle Installment Sales*, Notice. *Assignment. Debt. Secured Trans-
actions. Uniform Commercial Code*, Secured transactions. *Consumer
Protection Act*, Assignment of claim, Damages.

On appeal from a judgment denying recovery to the purchasers of a new
    automobile on their counterclaims in an action brought by the assignee
    of an automobile installment sales contract to recover amounts due on
    the contract and to recover possession of the automobile, there was no
    merit to the purchasers' contention that language of the notice provision
    contained in the contract, as mandated by a Federal Trade Commission
    rule, which subjects holders to all "claims and defenses which the debtor
    could assert against the seller," permitted them to recover affirmatively
    from the assignee of the contract for the alleged wrongful acts of the
    assignor-dealer. [540-543]
On appeal from a judgment denying recovery to the purchasers of a new
    automobile on their counterclaims in an action brought by the assignee
    of an automobile installment sales contract to recover amounts due on
    the contract and to recover possession of the automobile, there was no
    merit to the purchaser's contention that language in art. 9 of the Uniform
    Commercial Code, G. L. c. 106, § 9-318(1), providing that "the rights
    of an assignee are subject to . . . (a) all the terms of the contract,"
    permitted them to recover affirmatively from the assignee of the contract
    for the alleged wrongful acts of the assignor-dealer. [543-545]
The assessment of treble damages under G. L. c. 93A against the assignee
    of a contract was not appropriate in the circumstances. [545]

CIVIL ACTION commenced in the Superior Court Department
on March 3, 1980.
The case was tried before *John L. Murphy, Jr.*, J.

[1] William Morgan.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert L. Hernandez* for the defendants.

*Michael E. Hager* for the plaintiff.

O'CONNOR, J. The defendants, Rose and William Morgan, appeal from a judgment denying them recovery on their counterclaims in an action brought by the plaintiff, Ford Motor Credit Company (Ford Credit), to recover amounts due on an automobile instalment contract and to recover possession of the automobile covered thereby. We affirm the judgment.

The trial judge's findings of fact made in conjunction with Ford Credit's complaint and two counts of the counterclaim may be summarized as follows. On June 27, 1978, the Morgans purchased a new 1978 Mercury Zephyr automobile from Neponset Lincoln Mercury, Inc. (dealer). The Morgans had made several visits to the dealer who assured them that the automobile was reliable and economical. In order to finance their purchase through Ford Credit, the Morgans signed a "Massachusetts Automobile Retail Instalment Contract," a standard printed form contract prepared by Ford Credit. Printed in capital letters at the bottom of the first page of the form was the following statement: "NOTICE[:] ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." Section 19 of the contract requires purchasers to procure and maintain insurance on the vehicle at their own expense, "for so long as any amount remains unpaid" under the contract.

Ford Credit financed the automobile for $3,833. Payment was to be in thirty-six consecutive monthly instalments of $137.13 each. On July 11, 1978, a certificate of title was issued to Rose Morgan listing Ford Credit as first lienholder. The Morgans drove the automobile for approximately eighteen months, for a distance of over 11,500 miles. During this time,

they experienced several problems with the automobile, such as water leaking into the trunk, a faulty head gasket, rust, hood misalignment, and loss of shine. Their greatest complaint was that, when left unattended, the transmission would shift from "park" to "reverse," and would have to be shifted back to "park" before the vehicle could be started.

During the Fall of 1979, the Morgans began having financial difficulty, and missed their monthly automobile payments for November and December. Before January 1, 1980, William Morgan rented a garage in which he concealed the automobile. He removed the battery and removed or deflated the tires. He also failed to renew his insurance for 1980. In January, Ford Credit notified the Morgans that they were in default on the credit contract and requested that the default be cured by February 6, 1980. The Morgans made no further payments. To that time, they had made fifteen of their monthly payments totalling $2,056.95. The Morgans continued to hide their automobile for approximately two months after the court issued a surrender order. As a result, William Morgan received what the trial judge termed a "well earned" contempt judgment, which Morgan subsequently purged by surrendering the vehicle. The court later authorized Ford Credit to sell the vehicle. William Morgan successfully moved to delay the sale of the vehicle pending inspection, examination, and testing. By the time it was inspected, it had been extensively vandalized and was a total loss. The loss was not recoverable due to the Morgans' failure to obtain insurance for 1980.

Ford Credit sought recovery of $2,628.87 plus costs and attorney's fees. The Morgans counterclaimed in three counts, each of which is predicated on the theory, which we reject, that as assignee of the contract, Ford Credit stands fully in the same position as the assignor-dealer, and thus, any wrongful acts of the dealer are fully attributable to, and may provide the basis of affirmative recovery from, Ford Credit. The first count alleged the dealer's fraud and deceit in making false representations to the Morgans on which they relied. The second count alleged a G. L. c. 93A, § 2 (1986 ed.), violation for unfair and deceptive practices. The third count was for the

dealer's breach of express and implied warranties of merchantability and fitness for a particular purpose. The Morgans sought $7,061.68 in damages on each of the counts, and damages treble that amount under counts I and II.

Count I, except for damages, was submitted to a jury on special questions. The jury found that the dealer knowingly made false representations to the Morgans, on which the Morgans relied. Thereafter, the judge heard the complaint and counts II and III of the counterclaim without jury. The judge determined that the jury's special verdict provided the Morgans with a valid defense against Ford Credit's collection claim, but that the Morgans were not entitled to damages on any count of their counterclaim. The judge entered judgment for the Morgans on Ford Credit's complaint, and for Ford Credit on each of the counterclaims. The Morgans appealed to the Appeals Court, claiming that the judge erred in allowing their counterclaims to be used only defensively to extinguish Ford Credit's claim for the balance due on the credit contract. They also contend that the jury should have been permitted to assess damages as to counts I and III. We transferred the case to this court on our own initiative.

The Morgans' first contention is that the explicit language of the notice provision contained in the contract, which subjects holders to all "claims and defenses which the debtor could assert against the seller" permits them to recover affirmatively from Ford Credit for the dealer's wrongdoing. As the Morgans acknowledge, that notice provision is mandated by a Federal Trade Commission (FTC) rule which provides that it is an unfair or deceptive act or practice to take or receive a consumer credit contract which fails to include that provision. 16 C.F.R. § 433.2 (1978). Therefore, we look to the FTC's purpose in enacting the rule as a guide to our interpretation of the contract provision.

The rule was designed to preserve the consumer's claims and defenses by cutting off the creditor's rights as a holder in due course.[2] Federal Trade Commission, Preservation of Con-

---

[2] The FTC rule operates as follows. The required language that the assignee takes the contract "subject to" the consumer's claims and defenses against

sumers' Claims and Defenses, Final Regulation, Proposed Amendment and Statement of Basis and Purpose, 40 Fed. Reg. 53505, 53524 (Nov. 18, 1975) (to be codified at 16 C.F.R. § 433 [1978]). See *Thomas* v. *Ford Motor Credit Co.*, 48 Md. App. 617, 622 (1981). Under the holder in due course principle, which would apply were it not for the contract provision mandated by the FTC rule, the creditor could "assert his right to be paid by the consumer despite misrepresentation, breach of warranty or contract, or even fraud on the part of the seller, and despite the fact that the consumer's debt was generated by the sale." 40 Fed. Reg. at 53507. Thus, "[being] prevented from asserting the seller's breach of warranty or failure to perform against the assignee of the consumer's instrument, the consumer [would lose] his most effective weapon — nonpayment." *Id.* at 53509. Eliminating holder in due course status prevents the assignee from demanding further payment when there has been assignor wrongdoing, and rearms the consumer with the "weapon" of nonpayment.[3]

The FTC anticipated that in addition to nonpayment, affirmative recovery, that is, a judgment for damages against the assignee-creditor, would be available in limited circumstances.

---

the seller places an express condition on the consumer's promise to pay a sum certain, thus destroying the negotiability precedent to an assignee's having holder in due course status. J.J. White & R.S. Summers, Uniform Commercial Code § 14-8, at 722 (3d ed. 1988). *Thomas, supra* at 622. "It is as though the note said the following: 'The promise to pay embodied by this note is conditioned upon the absence of any valid defense in the hands of the maker.'" White & Summers, *supra* at 723. The language operates not due to any statute or regulation, but to the effect the notice has when it becomes part of the contract. *Thomas, supra* at 622. H.J. Alperin & R.F. Chase, Consumer Rights and Remedies § 280 (1979 & Supp. 1988).

[3] Merely raising a valid claim does not fully insulate the consumer from payments due if the value of the claim is less than payments outstanding. "Laymen, particularly automobile dealers, are wont to complain that under the rule any microscopic defect in the goods will give the buyer a right to quit paying, return the goods, and demand his money back. This is not an accurate statement of the law. . . . [M]ost defects in the underlying transaction do not give the buyer the right to stop paying entirely." White & Summers, *supra* at 729-730. However, in the present case, Ford Credit does not contest the judge's determination that the Morgans may raise their valid claim for fraud and deceit against the dealer as a complete defense to further payment.

Thus, in its statement of policy and purpose, the FTC spelled out the avenues of relief under the rule as follows: "[A] consumer can (1) defend a creditor suit for payment of an obligation by raising a valid claim against a seller as a set-off, and (2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account." 40 Fed. Reg. at 53524. However, the FTC made clear that "[t]he latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified. The most typical example of such a case would involve non-delivery, where delivery was scheduled after the date payments to a creditor commenced." *Id.* The FTC re-emphasized this point in stating, "[c]onsumers will not be in a position to obtain an affirmative recovery from a creditor, unless they have actually commenced payments and received little or nothing of value from the seller. In a case of non-delivery, total failure of performance, or the like, we believe the consumer is entitled to a refund of monies paid on account." *Id.* at 53527. Finally, the FTC anticipated that the rule would enable the courts to weigh the equities in the underlying sale, and "remain the final arbiters of equities between a seller and a consumer." *Id.* at 53524. Thus, the function of the rule is to allow consumers to stop payments, and, in limited circumstances, not present here, where equity requires, to provide for a return of monies paid. The FTC did not intend that the rule would, as a matter of course, entitle a consumer to a full refund of monies paid on account.[4] It follows, of course, that there is no merit to the Morgans' assertions that the con-

---

[4] The cases addressing affirmative recovery go no further than to hold that affirmative recovery is available up to the amounts paid in by the debtor. None has addressed the question whether a showing of rescission and restitution is a necessary precedent to such recovery. In each of the cases, it is arguable that the goods received were valueless. *Home Sav. Ass'n* v. *Guerra*, 733 S.W.2d 134 (Tex. 1987) (rock siding installed crumbled). *Thomas* v. *Ford Motor Credit Co.*, 48 Md. App. 617 (1981) (car argued to be "valueless"). *Hempstead Bank* v. *Babcock*, 115 Misc. 2d 97 (N.Y. Sup. Ct. 1982) (solar heating system "never worked"). *Tinker* v. *DeMaria Porsche Audi, Inc.*, 459 So. 2d 487 (Fla. Dist. Ct. 1984) (car "totally inoperable").

tractual language allows them affirmative recovery even beyond the amount they paid in. To expose a creditor to further affirmative liability would not only contravene the intention of the FTC, but would "place the creditor in the position of an absolute insurer or guarantor of the seller's performance." *Home Sav. Ass'n* v. *Guerra*, 733 S.W.2d 134, 136 (Tex. 1987). *Michelin Tires (Canada) Ltd.* v. *First Nat'l Bank*, 666 F.2d 673, 679-680 (1st Cir. 1981). This we decline to do.

The Morgans do not quarrel with the judge's conclusion that, in the circumstances, they had no right to rescind the sale. Further, they do not argue that they received little or nothing of value from the dealer. We do not imply that such an argument would have been appropriate. However, absent such a showing, and absent any support for the argument that the language in the contract should receive any interpretation other than the one the FTC intended it to have, the Morgans' contention that the language mandated by 16 C.F.R. § 433.2 (1978), affords them a right to affirmative recovery is without merit.[5]

The Morgans also argue that Article 9 of the Uniform Commercial Code, G. L. c. 106, § 9-318 (1) (1986 ed.), lends statutory support to their claim for affirmative recovery. That section provides: "Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 9-206 the rights of an assignee are subject to (*a*) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and (*b*) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." This

---

[5] We do not hold that a consumer may only assert his rights defensively in response to a claim initiated by an assignee for balance due on the contract. This would be in clear contravention of the FTC's intention. 40 Fed. Reg. at 53526. *Eachen* v. *Scott Hous. Syss., Inc.*, 630 F. Supp. 162, 164-165 (M.D. Ala. 1986). "Under such circumstances the financer may elect not to sue, in the hopes that the threat of an unfavorable credit report may move the consumer to pay." 40 Fed. Reg. at 53527. Therefore, it is clear that the account debtor may initiate suit to enforce his right, however limited it may be, to discontinue credit payments. See *Eachen, supra* at 164-165; *Tinker* v. *DeMaria Porsche Audi, Inc., supra* at 492-493.

court has never addressed the question whether the statute enables a consumer to recover affirmatively against an assignee-creditor.

There is nothing in § 9-318 which suggests that such affirmative recovery is appropriate. As the First Circuit noted in *Michelin Tires (Canada) Ltd.*, *supra* at 677, "[t]he key statutory language is ambiguous. That 'the rights of an assignee are *subject to* . . . (a) all the terms of the contract' connotes only that the assignee's rights to recover are limited by the obligor's rights to assert contractual defenses as a set-off, implying that affirmative recovery against the assignee was not intended. . . . The words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to,' or 'limited by.' There is nothing in the use of the words 'subject to,' in their ordinary sense, which would even hint at the creation of affirmative rights." (Citations omitted.) While the First Circuit recognized that the use of the word "claim" appears to contemplate affirmative recovery, the court noted that the title of § 9-318, "Defenses Against Assignee," and the Official Comment to this provision of the Uniform Commercial Code argue otherwise. *Id.* at 677-678. The Morgans attempt to distinguish *Michelin* on the ground that *Michelin* involved a suit against a creditor-bank which was a nonparticipating assignee, whereas here, as the judge found, the creditor knowingly participated in or was directly connected with the consumer sale. However, beyond making this factual distinction, the Morgans do not argue why the First Circuit's interpretation of the statute in *Michelin* should not extend to cases involving a participatory assignee, and no such reason is otherwise apparent. Moreover, G. L. c. 255, § 12F, suggests otherwise. That statute applies where the proceeds of a loan are used for a consumer purchase, and the creditor and seller are closely related. General Laws c. 255, § 12F, provides only that the creditor is "subject to all of the defenses of the borrower" arising from the sale or lease. Thus, to read § 9-318 to allow affirmative recovery where a creditor and seller are closely connected would contradict the Legislature's later enactment, c. 255, § 12F.

The Morgans argue that in *Graves Equip., Inc.* v. *M. DeMatteo Constr. Co.*, 397 Mass. 110 (1986), we "implicitly" recognized an account debtor's right to assert affirmative claims under § 9-318. However, the decision in *Graves* is inapposite here. In *Graves*, a contractor withheld retainages for materials delivered by a supplier. *Id.* at 111. The supplier assigned the right to the retainages, and subsequently breached the original contract. *Id.* The contractor claimed that it was entitled to offset the retainages as a consequence of the supplier's failure to perform despite the fact that the right to the retainages had been assigned. *Id.* We held that § 9-318 "incorporates the common law rule that an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than the assignor had." *Id.* at 112. Thus, under *Graves*, if the assignor would not be entitled to have collected retainages withheld due to its breach of contract, the assignee would not be so entitled. The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor. See *Quincy Trust Co.* v. *Pembroke*, 346 Mass. 730, 732 (1964). Cf. *Harrison Mfg. Co.* v. *Philip Rothman & Son, Inc.*, 336 Mass. 625, 628 (1958); *Lewis* v. *Club Realty Co.*, 264 Mass. 588, 591 (1928). It has never been interpreted to mean that the assignee will be liable for all the assignor's wrongs.

The Morgans also argue that "to the extent that the appellee stands in the dealer's shoes," treble damages under G. L. c. 93A should be assessed against the assignee. While the Morgans may well have a valid c. 93A claim against the dealer, we reject the claim that such liability should be extended to the dealer's assignee, in light of our determination that neither the contract provision required by the FTC rule nor G. L. c. 106, § 9-318, puts the assignee in the shoes of the assignor for purposes of being affirmatively liable for claims which could be brought against the assignor.

We conclude that in the circumstances of this case, the judge was correct in ruling that the Morgans were not entitled to affirmative recovery against Ford Credit. Thus, error, if any,

that may have occurred in reference to counts II and III of the counterclaim was harmless. The Morgans were entitled to no more than a judgment in their favor on Ford Credit's original claim as ordered by the judge.

*Judgment affirmed.*