Troy, Paul E., J.
In this action, plaintiffs Christopher S. DiFiore (DiFiore) and Pamela M. DiFiore (collectively, plaintiffs) seek compensatory and punitive damages arising from a loan transaction that took place in 2006. The complaint asserts claims for misrepresentation (Count I); fraud (Count II); and violation of the Massachusetts Consumer Protection Statute, G.L.c. 93A, §§2 and 9. Now before the Court is defendant American Home Mortgage Servicing, Inc.’s motion for summary judgment.[1] For the reasons recited below, the motion wifi be allowed.
BACKGROUND
The record before the Court reveals the following factual background, viewed in the light most favorable to plaintiffs as the non-moving party. Plaintiffs own a single-family residence at 116 Eutlaw Street, East Boston, MA. Prior to October 2006, the property was encumbered by two mortgages in favor of Countrywide Home Loans, one bearing a fixed annual interest rate of 6%, and the other an adjustable rate mortgage with a then current interest rate of 11.250%, totaling $287,000.00.
Sometime prior to October 26, 2006, DiFiore received a call from a representative of American Home *601 Mortgage regarding a potential refinancing for the property at an interest rate of 4%.[2] At a subsequent meeting at plaintiffs’ home, according to DiFiore, the representative provided additional information regarding the loan, stating that the initial interest rate would be 4% and would never go higher than 6%, and then only after eight years. Plaintiffs note that they explicitly informed the representative that they would not accept a loan that would increase their interest rate.
Included in the record is a Good Faith Estimate dated September 18, 2006, and a Tangible Net Benefit Certificate dated September 26,2006. The latter states that the borrowers certify that they considered all the circumstances of the loan applied for versus the loan being refinanced and concluded that the loan applied for was in their best interests. DiFiore also received a commitment letter from American Home Mortgage dated October 3, 2006, which states that the “initial interest rate adjustment period is 1 month(s). Thereafter, the interest rate will change every month(s) . . . The lifetime cap is 9.950%. In no event will the interest rate ever be less than the margin.” App. Exh. 7. The document was signed on October 5, 2006. Also in the record is a Uniform Residential Loan Application prepared by Ronald Stroup of American Home Mortgage and dated October 26, 2006.
The closing took place on October 26, 2006, at the office of Attorney Stephen J. Kellem, acting on behalf of American Home Mortgage and representing the mortgage broker, Union Capital Mortgage. Attorney Kellem gave DiFiore an Adjustable Rate Note in favor of American Mortgage in the amount of $297,600.00. The note provides as follows:
Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of 1.725% until October 31, 2006, and the initial payment provided for in Section 3(B) of this Note will be based on this rate (the “Initial Rate”). Commencing November 1, 2006, I will pay interest at a yearly rate of 8.953% (the “Subsequent Rate”). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.
Joint App., Exh. 9. The note also states that the interest rate may change as of December 1, 2006, and every month thereafter but, in any event, would be capped at 9.950%.
Additional documents that DiFiore received at the closing were a Truth-in-Lending Disclosure Statement, and an Adjustable Rate Mortgage Statement, both of which indicate that the loan had a variable interest rate. The mortgage instrument itself includes an Adjustable Rate Rider stating that the borrower will pay interest at a yearly rate of 1.725% until October 31, 2006, and thereafter interest at a yearly rate of 8.953%, with subsequent changes possible. All the documents are signed or initialed.
Monthly payments were to be mailed to American Home Mortgage Servicing, Inc., PO Box 660029, Dallas. TX 78266-0029. A follow-up letter from AHMSI-1, dated November 3, 2006, lists the address as PO Box 63170, Irving, TX 75063-1730. There is evidence in the record that AHMSI-1 was a Maryland corporation affiliated with American Home Mortgage, a New York corporation.
DiFiore testified in his deposition that he did not read any of the above documents, that Attorney Kellem never explained their content as he had another appointment to which he was rushing, and that as a result DiFiore just “signed and initialed . . .” DiFiore Dep., Exh. 3 at 43. He also testified in his deposition, upon review of the closing documents, that he did not believe he had seen, or did not recall having seen, the documents and did not recognize the signatures or initials as his. Id. at 46-63; 82-87. In his affidavit, DiFiore states that he did not receive copies of the documents and, although he does not doubt that he “signed documents of that sort at that time” he “just do[es] not recognize the signature on the ones presented in this case.” DiFiore Aff., Exh. 23, ¶¶3, 4.[3]
In December 2006 or January 2007, plaintiffs discovered that their annual interest rate had increased to 8.953%. They contacted American Home Mortgage customer service several times between January 2007, and May 2007, and were told that the problem would be rectified.[4] DiFiore testified that his last call to customer service occurred prior to January 2008. With no solution forthcoming, in late 2008, plaintiffs fell behind in their loan payments.
Meanwhile, on August 6, 2007, both American Home Mortgage and AHMSI-1 filed for Chapter 11 bankruptcy. In connection therewith, and pursuant to an asset purchase agreement (the APA) dated September 25, 2007, an entity known as AH Mortgage Acquisition Co. (AH Mortgage), incorporated in the State of Delaware on September 6, 2007, purchased certain intellectual property rights and assets from AHMSI-1, the Maryland corporation, including the right to use the name American Home Mortgage Servicing, Inc.
The United States Bankruptcy Court, District of Delaware, approved the APA on October 30, 2007, and the transaction closed on April 11, 2008. On April 14, 2008, AH Mortgage changed its name to American Home Mortgage Servicing, Inc., a Delaware Corporation (AHMSI-2). On that same date, AHMSI-1, the Maryland corporation, changed its name to AHM SV, Inc.[5]
AHMSI-2 sent plaintiffs a default letter dated December 11, 2008. By letter dated March 3, 2009, AHMSI-2 notified plaintiffs that they were eligible for a loan modification and, by letter dated April 28, 2009, *602 offered a modification with a fixed interest rate of 2% per year for three years, increasing to 3%, 4%, and 5% for the following three years and then fixed at 6%. Plaintiffs rejected the offer as it was based on the 8.93% annual rate rather than the 4% annual rate they contend they had been promised.
This action followed.[6] The gist of plaintiffs’ argument is that they entered into the loan transactions in reliance on AHMSI- l’s misleading and fraudulent statements to the effect that the loan was a fixed rate loan with an interest rate of 4% that, after eight years, would change to a fixed rate of 6%. As a result, as of May 2009, the balance on the loan was $348,392.32. Had plaintiffs not refinanced, the principal balance would be $280,000.00. And had the interest rate remained fixed at 4%, according to plaintiffs the balance would be significantly less than that amount.
DISCUSSION
This Court will grant summary judgment where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). ‘The moving party must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
AHMSI-2 moves for summary judgment on the grounds that it is an entirely different entity from AHMSI-1; that AHMSI was not in existence prior to April 14, 2008; that it is a Delaware corporation whereas AHMSI-1 was a Maryland corporation; that none of the individuals plaintiffs identify ever worked for AHMSI-2; and that all the interactions between plaintiffs and American Home Mortgage and AHMSI-1 took place prior to April 14, 2008. It further contends that pursuant to the APA it bought only the mortgage servicing business, not the mortgage company and, in any event, the Bankruptcy Court specifically held that AHMSI-2 cannot be held to successor liability under the APA.
Plaintiffs respond that, to the contrary, the terms of the APA directly impose successor liability on AHMSI-2. They point to several paragraphs in the Bankruptcy Court decision[7] in support of their contention, specifically paragraph 4, page 25, which provides that:
Notwithstanding anything to the contrary in this Order or the APA, to the extent any of the Purchased Assets consist of an interest in a consumer credit transaction subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations), the Purchaser shall remain subject to the same claims and defenses that are related to such consumer credit transaction or such consumer credit contract to the same extent as the Purchaser would be subject to such claims and defenses of the consumer if such interest had been purchased at a sale not under section 363 of the Bankruptcy Code . . .
Even if the above cited provision does not impose contractual successor liability upon AHMSI-2, plaintiffs argue that AHMSI-2 is liable under the general doctrine of successor liability. See, e.g. Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547 (2008). Neither argument survives scrutiny.
In Ford Motor Credit Co. v. Morgan, the Supreme Judicial Court addressed whether, as an assignee of a contract, Ford Credit stood fully in the same shoes as the assignor, such that any wrongful acts of the seller were attributable to, and provided affirmative recovery from, the buyer. 404 Mass. 537, 539 (1989). The Ford Motor court noted that the provision, mandated by the Federal Trade Commission (FTC), was designed to preserve the consumer’s rights by cutting off the creditor’s rights as a holder in due course. Id. at 540. Thus an assignee cannot demand payment from the consumer where there had been misrepresentation or other wrongdoing on the part of the seller/assignor. Id. at 541. To do so would eliminate the consumer’s most effective weapon against the seller’s breach of warranty or non-performance—non-payment. Id.
Addressing the FTC’s purpose in enacting the rule, the court also concluded that the FTC anticipated, in addition to non-payment, affirmative recovery against the assignee “in limited circumstances.” Id. The court went on to state that “consumers will not be in a position to obtain an affirmative recovery from a creditor, unless they have actually commenced payments and received little or nothing of value from the seller.” Id. at 542. “The FTC did not intend that the rule would, as a matter of course, entitle a consumer to a full refund of monies paid on account. It follows, of course, that there is no merit to [any] assertions that the contractual language allows . . . affirmative recovery even beyond the amount . . . paid in. To expose a creditor to further affirmative liability would not only contravene the intention of the FTC, but would place the creditor in the position of an absolute insurer or guarantor of the seller’s performance . . . This we decline to do.” Id. at 542-43 (internal quotations and citations omitted).
Similarly, in In re Mae, the United States Bankruptcy Court, District of Massachusetts, held that where a plaintiff alleged wrongdoing on the part of the loan originator/predecessor in interest of an assignee lender, a common-law claim for fraud cannot lie. 460 B.R. 1, 3 (Bankr.D.Mass. 2011). The court specifically noted that a claim for fraud might lie where it was based either on a statute or contract, but not as a basis for affirmative relief in tort. Id. See also Serra v. Quantum Servicing Corp., Civ. Action No. 11-11843- *603 DPW (D.Mass. August 15, 1012) at *19, where the court, citing both Ford Motor and In re Mae, stated that a debtor may have a c. 93A claim against a loan originator, liability cannot be extended to the originator’s assignee.
Here, the Bankruptcy decision clearly states that AHMSI-2 purchased the servicing business of AHMSI-1. Exh. 21, at 7, fJ. Therefore AHMSI-1 was not the assignee of the loan originator, which was American Home Mortgage. In addition, the provision relied upon by plaintiffs, quoted supra, applies only if the consumer received little or nothing of value. See Ford Motor, 404 Mass, at 542. That is not the case here. Thus to the extent that plaintiffs assert claims of misrepresentation against American Home Mortgage in connection with the loan transaction that occurred on October 26, 2006, these claims must fail.
Furthermore, the Bankruptcy decision also states that “[n]o common identity of incorporators, directors, or stockholders exists between the Purchaser and any Debtor. The Purchaser is not purchasing all of the Sellers’ assets and is not holding itself out to the public as a continuation of any Debtor. The Purchaser is not a successor of any Debtor.” Id. at 9, HL. Therefore to the extent that plaintiffs assert claims against AHMSI-1 in connection with their efforts to modify the loan after the initial transaction, those too must fail where (1) AHMSI-2 is an entirely separate entity from AHMSI-1; and (2) the Bankruptcy decision specifically forecloses any successor liability. Plaintiffs’ claims of common law successor liability and violation of c. 93A fail for the same reasons.
CONCLUSION AND ORDER
For the forgoing reasons, Defendant American Home Mortgage Servicing. Inc.’s Motion for Summary Judgment is ALLOWED.

For the sake of clarity, and for reasons that will become apparent, the Court will hereafter refer to the entity known as American Home Mortgage Servicing, Inc. that existed prior to April 14, 2008, as AHMSI-1. It will refer to the entity named American Home Mortgage Servicing, Inc. that existed after April 14, 2008, as AHMSI-2. The Court implies no connection between the two entities.

Although uncertain as to the identity of the caller, DiFiore subsequently identified the caller’s last name as Shou or Shoe.

Plaintiffs assert in their Rule 9A(b)(5) statement of facts that DiFiore denies signing the Good Faith Estimate, the Uniform Residential Loan Application, and the Commitment Letter. Nothing in DeFiori’s deposition testimony or affidavit supports that assertion.

Although it is not clear if plaintiffs spoke to the same representative each time, at least some of their calls were answered by Ronald Stroup who represented that the loan would be changed to a fixed rate of 5% and that they should not pay the loan until the problem was rectified.

It appears that, since the filing of the motion for summary judgment, AHMSI-2 has been re-named Homeward Residential, Inc.

Defendant also moves to strike plaintiffs’ Supplemental Rule 9(A)(b)(5) Statement of Undisputed Material Facts for failure to comply with this Court’s June 6, 2013 Order. At the June 6, 2013, hearing on the motion for summary judgment and defendant’s initial motion to strike plaintiffs’ original response to defendant’s 9A(b)(5) statement, the Court ordered plaintiffs to file a revised response in compliance with the Rule. Although plaintiffs did so, defendant argues that their responses and additional statements still fail to comply with the Rule in multiple respects and should be stricken. The Court notes that plaintiffs’ supplemental statement is very little, if any, improvement over its predecessor. Given this Court’s conclusion on defendant’s motion for summary judgment, it need not address the motion to strike. Nonetheless, the Court reminds the parties that failure to comply with the Rule has potentially serious consequences. See, e.g., Dziamba v. Warner & Stackpole, 56 Mass.App.Ct. 397, 399-401 (2002).

Plaintiffs assert that the statements on which they rely are included in the APA. However the APA is not in the record before the Court. The paragraph quoted, infra is in the Bankruptcy Court decision, as are the other provisions cited by plaintiffs.