# United States Court of Appeals
## For the First Circuit

No. 13-1557

JOHN P. SERRA, II,

Plaintiff, Appellant,

v.

QUANTUM SERVICING, CORP., WELLS FARGO BANK, N.A.,
TRUSTEE FOR RMAC PASS-THROUGH TRUST, SERIES 2010-A,

Defendants, Appellees,

EQUIFIRST CORPORATION,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,* Associate Justice,
and Thompson, Circuit Judge.

Glenn F. Russell, Jr., with whom Glenn F. Russell, Jr. &
Associates, P.C., was on brief for appellant.
Reneau J. Longoria, with whom Stephen M. Valente and Doonan,
Graves & Longoria, LLC, were on brief for appellees.

March 31, 2014

* The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**TORRUELLA, Circuit Judge.** John P. Serra, II ("Serra") asserts that his property was wrongfully sold at foreclosure by a party without any valid legal interest in his mortgage. He also extends claims in wrongful foreclosure and unfair business practices against an earlier mortgage holder that tried, unsuccessfully, to foreclose. All of these claims are predicated on a theory that Mortgage Electronic Registration Systems, Inc. ("MERS") lacked the authority to transfer Serra's mortgage. This court, however, has expressly adopted a contrary view of MERS's legality, and stare decisis is a hurdle far too high for Serra to surmount.

Additionally, Serra claims that subsequent mortgage assignees may incur liability for the allegedly predatory loan terms crafted by his original lender and that his right to rescission was improperly cut short by the sale of his property. Because a review of relevant Massachusetts law shows that these claims are similarly lacking, we affirm.

## I. Background

On May 2, 2007, Serra refinanced his residential home mortgage, taking out a $276,250 loan from EquiFirst Corporation ("EquiFirst")[1] secured by his Bellingham, Massachusetts home. The

---

[1] Serra's original complaint named three defendants: EquiFirst, Quantum, and Wells Fargo. A failure to timely serve EquiFirst, however, led to its dismissal from the case without prejudice on June 17, 2011. Notwithstanding that dismissal, Serra's twice-amended complaint continued to list EquiFirst as defendant. In

-2-

mortgage listed MERS as "nominee" for EquiFirst and as the "mortgagee" of record. According to Serra, the terms of this mortgage loan were both structurally unfair and knowingly against his best interest, in violation of Massachusetts law.

The Serra mortgage underwent a series of assignments beginning on April 7, 2009, when MERS transferred the mortgage to Barclays Bank, PLC. Barclays immediately transferred the mortgage onwards and, by November 25, 2009, it had been assigned to Quantum Servicing Corp. ("Quantum"). On June 1, 2011, Quantum undertook an additional assignment, transferring the mortgage to Wells Fargo Bank, N.A. as Trustee for RMAC Pass-Through Trust, Series 2010-A ("Wells Fargo"). Quantum remained the loan's servicer.

In October 2010, Serra sent a letter to Quantum -- then acting as servicer for Wells Fargo -- seeking to rescind his mortgage under the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"). Namely, Serra alleged that a $244.48 credit reporting fee was far above the accepted $50.00 market rate, amounting to a statutory violation sufficient for rescission. Quantum's response letter posed two questions: (1) could Serra tender the loan proceeds in full, and (2) could Serra provide documentation proving rescission was warranted. Quantum never

substance, however, these amended complaints alleged no claims against, and sought no relief from, EquiFirst. The district court thus determined that the sole defendants were effectively Quantum and Wells Fargo -- a determination Serra does not challenge on appeal.

received a response to these inquiries, and subsequently, Wells Fargo sold Serra's property at foreclosure.

Serra's suit, originally brought in state court, was removed on the basis of diversity. Having conducted a foreclosure sale and believing it was owed a deficiency judgment, Wells Fargo counterclaimed before the district court for breach of contract and possession of the foreclosed property. Summary judgment as to all claims was eventually entered in favor of Wells Fargo and Quantum, precipitating this appeal.

## II. Discussion

Because this appeal is before us as a result of the district court's grant of summary judgment, our review is <u>de novo</u>, and we interpret all facts on the record in support of the nonmoving party below. <u>Bos. Prop. Exch. Transfer Co.</u> v. <u>Iantosca</u>, 720 F.3d 1, 9 (1st Cir. 2013). All reasonable inferences that may be extrapolated from the record are drawn in favor of the non-movant, but allegations of a merely speculative or conclusory nature are rightly disregarded. <u>Suárez</u> v. <u>Pueblo Int'l, Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000). We affirm the district court's grant of summary judgment if, after undertaking this independent review, we agree that there exists no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>McCarthy</u> v. <u>Nw. Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995).

## A. MERS's Ability to Transfer Serra's Mortgage

Serra brings claims for wrongful foreclosure against Quantum and Wells Fargo. He also seeks to prove that Quantum engaged in unfair or deceptive business practices. Mass. Gen. Laws ch. 93A ("Chapter 93A"). Because these claims are predicated on the same erroneous legal theory, we review and dismiss them together.

In short, Serra claims that the MERS business model, under which MERS possesses a bare legal interest in a mortgage, transferable among MERS member institutions, is contrary to Massachusetts law. As a consequence, Serra theorizes, MERS lacked legal authority to transfer the Serra mortgage, rendering both its initial assignment and all subsequent transfers of the mortgage invalid.

This argument willfully disregards our holding in Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282 (1st Cir. 2013). In Culhane, we ruled unequivocally that MERS may validly possess and assign a legal interest in a mortgage. Id. at 292-93. Far from finding it contrary to law, we remarked that "MERS's role as mortgagee of record and custodian of the bare legal interest as nominee . . . fit[s] comfortably within the structure of Massachusetts mortgage law." Id. at 293; see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 355 (1st Cir. 2013) (applying

-5-

<u>Culhane</u> to find that "MERS, as the mortgagee of record, possessed the ability to assign [the] mortgage").

Indeed, Serra conceded at oral argument that <u>Culhane</u> invalidates his claims and offered only the suggestion that we disregard the case in reaching our decision, given that the Massachusetts Supreme Judicial Court has not ruled expressly on this issue of state law.[2]  Of course it is true that <u>Culhane</u> resolved an issue of Massachusetts law, and thus it could theoretically be displaced by a contrary ruling arising from the Massachusetts Supreme Judicial Court.  See <u>Blinzler</u> v. <u>Marriot Int'l, Inc.</u>, 81 F.3d 1148, 1151 (1st Cir. 1996).  In the absence of any such contrary holding, however, <u>Culhane</u> unquestionably binds this court: under Massachusetts law, MERS may validly possess and transfer a legal interest in a mortgage.  See <u>Arizona</u> v. <u>Rumsey</u>, 467 U.S. 203, 212 (1984) ("[A]ny departure from the doctrine of stare decisis demands special justification.").

As presciently stated in <u>Culhane</u> itself, where litigants attempt to repackage "old wine in a new bottle . . . we see no point in decanting it again."  <u>Culhane</u>, 708 F.3d at 294.  Put

---

[2]  Serra also urges us to disregard <u>Culhane</u> on the theory that the appellant's briefs in that case were of poor quality.  Whatever the veracity of that claim, it has no effect on the binding nature of our precedent and, moreover, it certainly did not impede this court in <u>Culhane</u> from conducting a thorough and convincing analysis of Massachusetts law.  As this claim is forwarded here by a litigant whose own briefs exhibit a grave dearth of developed argumentation, we are also reminded that counsel in glass houses ought not throw stones.

simply, Serra's theory has been foreclosed.  The grant of summary judgment as to Serra's wrongful foreclosure and Chapter 93A claims is affirmed.

## B.  Claims Based on Assignee Liability

Serra next seeks to have Quantum and Wells Fargo answer for what he believes are structurally unfair loan terms and predatory lending practices engaged in by EquiFirst.  See Mass. Gen. Laws ch. 93A, § 2; id. ch. 183, § 28C (the "Borrower's Interest Act").  We need not explore whether the loan terms were in fact unlawful.  Rather, because both his Chapter 93A claim for damages and his Borrower's Interest Act claim for equitable relief rise and fall on a common, mistaken, theory of assignee liability, we consider them in tandem.

Serra's argument rests solely on a recent Massachusetts Supreme Judicial Court case, Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 991 N.E.2d 1086 (2013), which he believes establishes assignee liability for his statutory claims.  An independent review of Drakopoulos, however, reveals this argument's erroneous underpinnings.

The plaintiffs in Drakopoulos brought six claims, three of which are relevant here.  While two of these claims matched Serra's own, arising under Chapter 93A and the Borrower's Interest Act, the third arose under the Predatory Home Loan Practices Act ("PHLPA"), Mass. Gen. Laws ch. 183C.  See Drakopoulos, 991 N.E.2d

at 1091.  As recognized by the Supreme Judicial Court, PHLPA's text expressly includes a broad grant of assignee liability.  Id. at 1092 n.11; see also Mass. Gen. Laws ch. 183C, § 15(a) ("Any person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert against the original lender . . . .").  Thus, PHLPA expands the common law of assignee liability in the limited instance of certain "high cost" loans.  Drakopoulos, 991 N.E.2d at 1092 ("To the extent that the bank may [] have liability as an assignee by virtue of the act, it would extend to . . . statutory [Chapter 93A and Borrower's Interest Act claims, as well]." (emphasis added)).

In relying on Drakopoulos, Serra fails to acknowledge that his complaint alleged no violation of PHLPA,[3] and thus cannot receive the advantage of that act's broad grant of assignee liability.  Moreover, neither Chapter 93A nor the Borrower's Interest Act serves as an independent ground for extending liability to Serra's claims.  See id. at 1095 n.16 ("Where an assignee played no part in the unfair or deceptive acts of an

---

[3]  Beyond never referencing PHLPA, Serra did not plead facts sufficient to show his was a "high cost" loan.  PHLPA specifically defines such loans as those in which: (1) the annual percentage rate "exceed[s] by more than 8 percentage points for first-lien loans, or more than 9 percentage points for subordinate-lien loans, the yield on United States Treasury securities," or (2) "the total points and fees exceed the greater of 5 per cent of the total loan amount or $400."  Mass. Gen. Laws ch. 183C, § 2.

assignor, principles of assignee liability ordinarily will not render the assignee liable for affirmative damages for those acts."); id. at 1097 n.20 ("[But for PHLPA], an assignee who took no part in the making of a home loan would not fall within the scope of liability of the Borrower's Interest Act.").

In the absence of such statutorily created liability, Serra cannot hold Quantum and Wells Fargo responsible for the allegedly predatory practices of their predecessor-in-interest. Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 545, 536 N.E.2d 587, 591 (1989)("The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor."). The district court's grant of summary judgment on these claims is affirmed.

## C. Serra's Right to Rescind

Serra also seeks the post-foreclosure-sale rescission of his mortgage and, in the alternative, damages for the disregard of his initial rescission request, which predated the sale of his property. This claim for rescission is predicated on an alleged violation of MCCCDA § 10(i)(2), which holds that the under-reporting of a finance charge by more than $35.00 may amount to a statutory violation. That is, while Serra paid $244.48 for a credit report, he alleges that the reasonable market rate was never more than $50.00. This $194.48 difference, he claims, was

improperly excluded from the calculation of his finance charge, resulting in the understatement of the amount financed and annual percentage rate.

The district court granted summary judgment on this claim,[4] finding that the right to rescind is unequivocally cut off by a subsequent foreclosure sale and that, although Serra <u>sought</u> rescission prior to sale, this unilateral act was insufficient to <u>effectuate</u> such rescission, meaning the right was unexercised when it terminated at the time of sale. Damages, the district court held, could be available for the failure of a mortgage holder to duly undertake consideration of a rescission request. Nonetheless, concluding that Serra's purported basis for rescission was without merit, the district court refused to award such damages here.

We need not retread each step along the district court's detailed analytical path, for its eventual conclusion neatly highlights the fatal flaw in Serra's claim. That is, having failed

---

[4] Serra appears to suggest that the district court's conclusion wrongly relied on precedent interpreting the Federal Truth in Lending Act ("TILA"). In fact, MCCCDA was intentionally constructed to align with TILA, <u>see</u> <u>Lynch</u> v. <u>Signal Fin. Co. of Quincy</u>, 367 Mass. 503, 505, 327 N.E.2d 732, 734 (1975), and "[w]here the Massachusetts Legislature in enacting a statute follows a Federal statute, the Massachusetts courts follow the adjudged construction of the Federal statute by the Federal courts," <u>In re Fuller</u>, 642 F.3d 240, 243 (1st Cir. 2011) (alterations omitted). Thus, in dispatching its duty to faithfully forecast what a Massachusetts court would do if presented with this case, <u>see</u> <u>Blinzler</u>, 81 F.3d at 1151, the district court correctly turned to our own TILA precedent for guidance, <u>Mayo</u> v. <u>Key Fin. Servs., Inc.</u>, 424 Mass. 862, 864, 678 N.E.2d 1311, 1313 (1997).

to sufficiently plead any valid basis to rescind his mortgage loan at any time, Serra has presented no genuine issue of material fact sufficient to require this court to delve into the remainder of his claims regarding the precise scope and duration of his rescission rights.

Although it may be, arguendo, that a spurious $194.48 charge would -- on a different record -- suffice to establish an MCCCDA violation for which rescission might lie, Serra has failed to provide any evidentiary support for the claim that $50.00 was the appropriate market rate. In fact, having reviewed the full record, the sole reference to $50.00 as the accepted rate is found in Serra's pleadings. This, without more, is insufficient to survive summary judgment. Transurface Carriers, Inc. v. Ford Motor Co., 738 F.2d 42, 46 (1st Cir. 1984) (finding no genuine issue of material fact where a party offered "no more than argument," unsupported by "affidavits, deposition, or other appropriate materials raising a question of fact" (internal citation omitted)).

If factual, Serra must necessarily have derived this $50.00 figure from some verifiable source, but -- for reasons unknown -- he decided to leave the record bereft of any and all supporting proof. In contrast, Wells Fargo and Quantum offer an affidavit from the credit reporting agency, with accompanying invoice, attesting that the full $224.48 was a true and reasonable fee for services. We offer no comment on the actual validity of

that amount, but on the record before us we see no genuine issue of material fact in dispute.  Having chosen to rest on the laurels of bald allegation, Serra leaves us no choice but to affirm the grant of summary judgment.  <u>Ruiz-Rosa</u> v. <u>Rullán</u>, 485 F.3d 150, 156 (1st Cir. 2007) ("Allegations made in a plaintiff's complaint, standing alone, are not enough to oppose a properly supported motion for summary judgment.").

**D.  Wells Fargo's Counterclaims**

The final issue remaining on appeal is Serra's claim that summary judgment was wrongly awarded to Wells Fargo on its counterclaims for breach of contract and possession.

As to breach of contract, we note that Serra dedicates less than five lines of his appellate brief to this issue and offers only the theory that summary judgment is inappropriate given the "erroneous application of the law described [elsewhere in his brief.]"  Even were such briefing not ripe for a finding of waiver, <u>see</u> <u>Mass. Sch. of Law at Andover, Inc.</u> v. <u>American Bar Ass'n</u>, 142 F.3d 26, 43 (1st Cir. 1998), we have identified no such "erroneous application" of law and thus see no viable grounds to disturb the district court's finding.

The claim regarding possession gives us no greater pause, as Serra now forwards arguments which were never raised below, and are thus barred by our waiver doctrine.  <u>Sands</u> v. <u>Ridefilm Corp.</u>, 212 F.3d 657, 663 (1st Cir. 2000).  In fact, before the district

court, Serra argued only that Wells Fargo had to prove strict compliance with Massachusetts' statutory foreclosure requirements, Mass. Gen. Laws ch. 244, § 14, and the governing documents of the RMAC Pass-Through Trust, Series 2010-A.  Now, he abandons that argument in favor of the suggestion that mere adherence to those statutory requirements and trust documents is insufficient, a party must further bring a claim for "summary process" under Mass. Gen. Laws ch. 239.

Even were this argument not waived, it is clear that "summary process" is not the exclusive means by which a foreclosing entity make seek possession of real property in Massachusetts.  <u>See</u> Mass. Gen. Laws ch. 184, § 18 ("No person shall attempt to recover possession of land . . . other than through an action brought pursuant to chapter two hundred and thirty-nine <u>or such other proceedings authorized by law</u>." (emphasis added)).  Having failed to articulate any clear theory as to why a properly filed counterclaim before the district court would not constitute such an alternative means to establish possession, Serra's claim must fail.

### III. <u>Conclusion</u>

In the absence of a dispute of law or fact sufficient to survive summary judgment, we affirm.

**<u>Affirmed</u>.**

-13-